WOLFINGER *v.* FREY ET AL.

[No. 248, September Term, 1959.]

186

*Decided July 18, 1960.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Horney, JJ.

*E. Stuart Bushong,* with whom were *Lane, Bushong* and *Byron, Gunter & Geppert,* and *William H. Geppert* on the brief, for appellant.

*Ernest V. Wachs,* for appellees.

Brune, C. J., delivered the opinion of the Court.

The defendant, Earl Wolfinger, appeals from judgments entered on separate verdicts in favor of the plaintiff, Sara Lucille Frey, for $5,000 and in favor of the plaintiff, James

Frey, for $2,500 for damages resulting from an automobile collision which occurred on August 25, 1958. James Frey was the owner and operator of one automobile, and his wife, Sara Lucille Frey, was a passenger in his car. The defendant was the owner and operator of the other car. While the Frey car was stopped for a red traffic light at a street intersection in Hagerstown, the Wolfinger car, due to a failure of brakes, rammed into it from the rear. The two suits by the Freys against Wolfinger—the wife's for personal injuries and the husband's for loss of the wife's services, for hospital and medical expenses and for damage to his automobile—were consolidated for trial and were submitted on the same record, briefs and argument in this Court.

On this appeal it is not denied that the defendant was at fault in the collision and hence liable for some damages. Mrs. Frey's examining physician, Dr. Lewis Brings, gave his opinion that she was suffering from cystitis and trigonitis and that, following the accident, the condition "flared up" and she developed some pyelitis and had a twenty per cent partial permanent disability as a result of her chronic pyelitis. The chief and underlying issue in the case is whether or not her condition was caused by a traumatic injury to the kidney sustained as a result of the collision. The plaintiffs' contentions on this question rest largely on the opinion of Dr. Lewis Brings, Mrs. Frey's examining physician, that it was so caused.

The defendant-appellant claims that the examining physician should not have been permitted to testify with regard to the cause or extent of her disability because, in doing so, he relied in part (a) upon the case history given him by the injured plaintiff; (b) that for the same reason and because of alleged defects in a hypothetical question he should not have been permitted to state his opinion in response to that question with regard to the cause of her ailment; and (c) that because of the absence of proper proof of causation, evidence as to damages claimed to have been sustained as a result of the collision was improperly admitted. The defendant made appropriate objections to the admission of the above testimony and

also offered motions to strike and a prayer presenting his theory, which was refused.

Mrs. Frey testified that just before the accident she had been sitting more or less sideways on the front seat of the car with her back to the door and that as a result of the collision she was thrown out of the seat, and that her knee and forehead struck the dash and her back in the region of the right kidney struck the handle of the right front door. She was on her way to work at the time of the accident and she did work that afternoon, but was unable to continue her scheduled work that evening. She went home and summoned her family physician. He gave her a heat and vibration treatment. The next morning, when she arose, she found blood in her urine, which was the first time in her life that she had encountered such a condition. She again consulted her family physician. He apparently did not, at that time, suggest that she consult any other doctor, but continued heat and vibration treatment. Blood in the urine continued intermittently for nearly a month. Mrs. Frey's family physician then suggested that she see a gynecologist, and she did so. This doctor, finding no gynecological cause for her condition, referred her to a urologist, Dr. Crisp, whom she first saw on September 24, 1958.

Dr. Crisp sent Mrs. Frey to the Washington County Hospital for the purpose of making cystoscopic and pyelographic examinations and tests. She remained five days. Subsequently, when she had a urine retention, she was obliged to reenter the hospital where she was catheterized and given medication during another five-day period. Thereafter another series of urological examinations were made. She then returned to her employment and worked fairly regularly for the next six months. During this period she consulted and was also treated by two orthopedic surgeons.

At the trial, after both of the plaintiffs had testified,[1] a general practitioner, Dr. Lewis Brings, with thirty-five years'

1. Since no part of the husband's testimony was included in the appendix to the appellant's brief, we assume his testimony did not concern the causal relationship between the accident and the primary ailments of which his wife complained.

experience, was called to testify as a medical expert. He had graduated from the University of Vienna in 1925; was an intern and resident doctor in different hospitals in Vienna from 1925 to 1938; came to the United States in 1939 and had practiced in Cresaptown and Cumberland ever since. He had had occasion to treat patients suffering with kidney and bladder ailments fairly frequently—his testimony was that he examined patients with similar conditions "every month." Mrs. Frey consulted Dr. Brings and was examined by him not for purposes of treatment, but with a view to his testifying in this case. His opinion was that her condition was caused by the collision. There was some difference of opinion between Dr. Brings and Dr. Crisp, who was called as a witness by the defendant; but Dr. Crisp admitted that it was possible that the blow to the kidney could have caused the condition.

The defendant points out that Dr. Brings was a general practitioner and not a specialist in urology. He then contends that "[w]ithout taking into consideration the plaintiff's [Mrs. Frey's] case history, he [Dr. Brings] was totally unqualified to express any opinion as to casual relationship between the accident and the plaintiff's condition fifteen months later." We may assume, at least for the purposes of this case, the correctness of the conclusion stated in this quoted contention but that does not establish the soundness of the premise upon which it is founded—that Dr. Brings did not have Mrs. Frey's case history before him or at least did not have it in any form in which he could make use of it in giving his opinion.

Before going into that matter we shall refer briefly to one contention which the defendant apparently raised in the trial court but which we do not understand to be pressed on appeal, and which seems to be abandoned in the light of the contention above stated. This contention was that because Dr. Brings was a general practitioner and not a specialist, he was not qualified to testify at all as an expert on the cause of Mrs. Frey's illness. Because of the importance in this case of Dr. Bring's testimony, we may observe that we see no validity to a contention that unless he were a specialist

in the medical field involved he could not testify to his opinion, basing it upon a case history and his examination of the injured person.[2]

Dr. Brings testified that he had examined Mrs. Frey, that he had taken a case history from her, that he had examined her hospital records, and that in his examination of Mrs. Frey, apart from a leg-raising test, he had made no tests or urological examinations. He was properly not permitted to testify with regard to, or on the basis of, the case history given him by Mrs. Frey. *Parker v. State,* 189 Md. 244, 55 A. 2d 784. A like ruling was, however, made, as a result of

---

2. A general practitioner who was not a specialist was held qualified to testify as a medical expert in *Annapolis Gas & Elec. Lt. Co. v. Fredericks,* 109 Md. 595, 72 A. 534 (injury due to contact with live electric wire); and in *Armour & Co. v. Leasure,* 177 Md. 393, 9 A. 2d 572 (food poisoning case; testimony re kind and condition of food likely to harbor germs of particular disease). Cf. *United Rys. & Elec. Co. v. Corbin,* 109 Md. 442, 450, 72 A. 606, where one doctor admitted that because of lack of familiarity with the effects of electric shock, he could not tell whether the patient's condition was due to such shock or to fright, and his testimony was held inadmissible). In a number of cases the testimony of a general practitioner (frequently an attending physician) has been held admissible on questions of mental capacity or condition, though the witness was not a specialist in such matters: *Crockett v. Davis,* 81 Md. 134, 31 A. 710; *Jones v. Collins,* 94 Md. 403, 413, 51 A. 398 (30 years' acquaintance, prescribed only twice); *United Rys. & Elec. Co. v. Corbin, supra,* 109 Md. at 453; *Mitchell v. Slye,* 137 Md. 89, 102, 111 A. 814; *Donnelly v. Donnelly,* 156 Md. 81, 143 A. 648; *Love v. Love,* 158 Md. 481, 148 A. 814; *Johnston v. Schmidt,* 158 Md. 555, 149 A. 283; *Davidove v. Duvall,* 160 Md. 345, 153 A. 417; *Doyle v. Rody,* 180 Md. 471, 25 A. 2d 457; *Marshall v. Sellers,* 188 Md. 508, 53 A. 2d 5 (sufficient opportunity to observe is required). See also McCormick, *Evidence,* § 13, p. 29; 20 Am. Jur., *Evidence,* §§ 785, 865. Usually the degree of expertness required is left to the discretion of the trial court. *General Automobile Owners' Ass'n v. State, Use of Penn,* 154 Md. 204, 212, 140 A. 48; *Baltimore, C. & A. Ry. Co. v. Moon,* 118 Md. 380, 392, 84 A. 536; 20 Am. Jur., *Evidence,* § 786.

This note makes no effort to catalogue the cases in which opinion testimony by non-specialist medical experts has been involved, but the qualifications of the witness have not been challenged or commented upon.

objections interposed by the defendant, which prevented Dr. Brings from testifying on the basis of anything contained in the hospital records. This ruling excluded not only the case history contained in those records, but also the results of the several urological tests, including pyelograms and the results of cystographic examinations. It likewise excluded records of her prior hospitalizations, which pertained to the birth of Mrs. Frey's child by a Caesarean section and to gynecological operations both before and after that event.

The total exclusion of the hospital records from consideration by Dr. Brings as a foundation for his opinion was clearly erroneous. These records were admissible in evidence, including any case history therein contained, at least so far as pathologically germane. Code (1957), Art. 35, § 59; *Wickman v. Bohle,* 173 Md. 694, 196 A. 326; *Bethlehem-Sparrows Point Shipyard, Inc. v. Scherpenisse,* 187 Md. 375, 50 A. 2d 256; *Lee v. Housing Authority,* 203 Md. 453, 101 A. 2d 832; *Shirks Motor Express v. Oxenham,* 204 Md. 626, 106 A. 2d 46. No such question is presented as in *West v. Fidelity-Baltimore National Bank,* 219 Md. 258, 147 A. 2d 859; and the limitation stated in *Old v. Cooney Detective Agency,* 215 Md. 517, 138 A. 2d 889, that the history, to be admissible, must be "pathologically germane," would surely not bar the case history pertinent to the hospitalizations which followed the collision here involved. The records as to injuries sustained in the accident would seem to fall squarely within the holding in *Scott v. James Gibbons Co.,* 192 Md. 319, 330, 64 A. 2d 117.

We also think it clear that an examining physician, such as Dr. Brings, in formulating and stating his opinion, could make use of the history and the objective results of laboratory tests included in the hospital records, and that they could be used as a basis for a hypothetical question. *Thompson v. Standard Wholesale Phosphate & Acid Works, Inc.,* 178 Md. 305, 318-319, 13 A. 2d 328; *Twombley v. Fuller Brush Co.,* 221 Md. 476, 485-486, 158 A. 2d 110. Cf. *Ihrie v. Anthony,* 205 Md. 296, 309, 107 A. 2d 104; *Williams v. Dawidowicz,* 209 Md. 77, 86, 120 A. 2d 399.

It is, we think, a matter of common knowledge and experi-

ence (and, we may add, of common sense), of which we may take judicial notice, that hospital records do contain, among other things, the patient's history and records of laboratory tests made during the patient's stay in the hospital. We also think that Dr. Brings' testimony, cut short though it was, makes it reasonably apparent that this was true of the hospital records here involved, and that the hospital records which he examined included those pertaining to Mrs. Frey's Caesarean section and gynecological operations as well as those pertaining to her hospitalization following the automobile collision.

We think that here (as in *Bethlehem Steel Company v. Munday*, 212 Md. 214, 129 A. 2d 162) it is unnecessary to go at length into the terms or sufficiency of the hypothetical question put to Dr. Brings. The rules with regard to such questions have been well established. Among them are the rules that the question should contain a fair summary of the material facts in evidence essential to the formulation of a rational opinion concerning the matter to which it relates (*Mathiesen Alkali Works v. Redden,* 177 Md. 560, 10 A. 2d 699) and that the question must not be confusing to the jury (*Thompson v. Standard Wholesale Phosphate & Acid Works, supra*). At least at the time when ·the question was propounded, no problem of conflicting evidence was presented, and we shall therefore not discuss it. No extensive citation or analysis of the many decisions in this State bearing on the general subject of hypothetical questions would, we think, be very helpful.

Apart from relatively minor objections to the hypothetical question and objections which were met by amendments to it, the defendant's objections to the question and to Dr. Brings' expression of opinion are these: (a) he took into account the case history given him by Mrs. Frey; (b) that the question omitted any statement of the results of the pyelograms and the cystographic examinations; and (c) that the question was so lengthy and complicated as to be confusing to the jury.

Though the question was long and somewhat complicated, we do not find that any objection was made to it in the trial court on the ground that it was confusing. The defendant

was called upon to state his grounds of objection on each of the several occasions when he objected to the hypothetical question, but this one was not among them. We think it was thereby waived and that it is, therefore, not properly before this Court. Maryland Rules, Rule 885. Such questions are left largely to the discretion of the trial court (*Quimby v. Greenhawk,* 166 Md. 335, 339, 171 A. 59) and we find little to support a claim of abuse of discretion in this respect, even if the question were properly raised.

Neither of the other questions, we think, would have arisen but for the defendant's objections to the use of the hospital records and the erroneous rulings sustaining them. Dr. Brings' testimony is not clear as to what facts (if any) in the case history he did take into consideration beyond what was stated in the hypothetical question. We think that that question as propounded gave a fair summary of the injured plaintiff's testimony with regard thereto. The fact that the hospital tests had been made was stated, but the results thereof were not included. However, it is clear that they were known to the doctor and he should have been allowed to state his opinion with those results as one of the bases for his conclusions.

It is true that the results of these tests were not put before the jury in connection with Dr. Brings' opinion as to either causation or disability. Dr. Crisp, however, testified with regard to them as a witness for the defendant, and the defendant thus received the benefit of Dr. Crisp's interpretation of them. Though the defendant succeeded in having them kept out of consideration while Dr. Brings was on the stand, and did not cross-examine him with regard to them, he had them available for such use if he had chosen to cross-examine Dr. Brings as to the reasons for his opinion. He could have cross-examined Dr. Brings with regard to his opinion without waiving his objection to its admissibility. See *United Rys. & Elec. Co. v. Corbin, supra,* 109 Md. 442, at 455; *MacEwen v. State,* 194 Md. 492, 504, 71 A. 2d 464; *Jones v. State,* 205 Md. 528, 536, 109 A. 2d 732; *Williams v. Dawidowicz, supra,* 209 Md. 77, at 86. After Dr. Brings had testified that he could form and had formed an opinion with regard to causation on the

basis of the hypothetical question and his examination of Mrs. Frey, the court overruled the defendant's objection based upon the absence of the results of these tests and suggested that this might be made the basis of cross-examination. The defendant did not so cross-examine.

After Dr. Brings' opinion as to causation had been admitted, he also testified as to his opinion with regard to the extent of disability. This, too, was admitted over objection. On cross-examination directed to the question of the extent of disability, the defendant elicited a statement from Dr. Brings to the effect that he "couldn't form an opinion of any patient without the history, the physical examination and some laboratory tests or additional x-rays or whatever might be indicated" and a further statement that he had based his opinion in part upon the history which Mrs. Frey had given him when he examined her. The court overruled the objection which the defendant then renewed to Dr. Brings' opinion and permitted it to remain in evidence. The defendant then stated that he waived the right of further cross-examination in order to preserve his objection. Under the authorities above cited, this was an unnecessary precaution; but it was, we think, nonetheless a waiver.

A reading of Dr. Brings' testimony leaves some doubt as to whether his statement of the things which he took into consideration in forming his opinion was limited to the subject then under consideration, which was the question of the extent of disability, or also applied to the question of causation. We shall assume that it applied to both, though this is by no means clear.

In the rather unusual circumstances of this case, we think that any defects which there may have been in the hypothetical question and any errors which there may have been in letting Dr. Brings' opinion testimony go to the jury upon the evidence which the trial court had admitted were not prejudicial errors calling for a reversal of the judgments and a new trial.

As to the case history, it is difficult to think of any substantial fact pertaining to the injuries sustained in the collision and subsequent developments which could have been added by any statement of Mrs. Frey to Dr. Brings either to

the facts stated in the hypothetical question or to those which would be contained in the hospital records. Dr. Brings had heard the one and was familiar with the other.

As to the results of the hospital tests, it is true that they were not contained in the hypothetical question. (We may add that we think it at least highly questionable that Mrs. Frey could have told Dr. Brings what they showed.) He was, however, entirely familiar with the results shown by the hospital records. Cf. *Coastal Tank Lines v. Canoles*, 207 Md. 37, 44-45, 113 A. 2d 82, where it was contended (*inter alia*) that it was erroneous to permit an attending physician to express an opinion when he had not heard all of the testimony, especially that of the plaintiff, with regard to a prior injury. This contention was rejected because it was shown that the doctor knew all about the prior injury and had taken it into account.

Here we think that through his examination of the injured plaintiff, through the facts stated in the hypothetical question and through his examination of the hospital records, Dr. Brings actually had before him, and was entitled to take into consideration, all that was necessary to enable him to state the opinions which he expressed as to the causation and as to the extent of the injured plaintiff's disability. We see no reason to suppose that with that same information before him, without any restriction upon his use of any of it, he would have, or would have had, any different opinion on either of those questions. Under those circumstances there seems to be neither any injustice to the defendant in the result of the trial nor any useful purpose to be served by a reversal of the judgments and a new trial.

This Court has taken the view that a judgment should not be reversed for error that is not prejudicial. *Baltimore Transit Co. v. State, Use of Castranda*, 194 Md. 421, 439, 71 A. 2d 442; *Adams v. Benson*, 208 Md. 261, 269, 117 A. 2d 881. We adhere to that rule. Where, as here, if there was any error it was not only not prejudicial but was induced by ill founded objections interposed by the appellant, there seems to be all the more reason for adhering to this rule and applying it.

196

Our conclusion that the admission of Dr. Brings' opinion testimony was at most non-prejudicial error is determinative of the case, and the judgments will accordingly be affirmed.

*Judgments affirmed, with costs.*