599 A.2d 1159

**Ruth R. UNGAR and Norbert T. Ungar**

v.

**Jacob C. HANDELSMAN.**

**No. 82, Sept. Term, 1990.**

Court of Appeals of Maryland.

Jan. 7, 1992.

Norbert T. Ungar (Ruth R. Ungar, on brief), Randallstown, for petitioners.

M. Bradley Hallwig (T. Michael Preston, Anderson, Coe & King, on brief), Baltimore, for respondent.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, CHARLES E. ORTH, Jr., Judge of the Court of Appeals, (retired, specially assigned), and MARVIN H. SMITH, Judge of the Court of Appeals (retired, specially assigned), JJ.

McAULIFFE, Judge.

Ruth R. Ungar and her husband, Norbert T. Ungar, lost their medical malpractice claim against Dr. Jacob C. Handelsman when summary judgment was entered against them in the Circuit Court for Baltimore City. They contend that summary judgment should not have been granted, either because the record disclosed contested issues of material facts, or because the trial judge abused his discretion in not continuing the hearing to permit them to obtain counsel and to file any additional documents required to

more clearly show the existence of a genuine dispute as to material facts. The respondent, in addition to arguing that summary judgment was properly granted, contends that this appeal was not timely.

## I.

On 28 April 1981, Dr. Handelsman surgically removed Mrs. Ungar's thyroid gland. On 6 May 1981, five days after her discharge from the hospital, Mrs. Ungar suffered a major embolic stroke, which caused significant permanent disability. On 26 April 1984, the Ungars filed a claim with the Health Claims Arbitration Office (HCAO) alleging malpractice on the part of Dr. Handelsman and others. The claim was heard in October of 1987 and the arbitration panel found in favor of all defendants. On 14 January 1988, the Ungars filed a notice of rejection and an action to nullify the award in the Circuit Court for Baltimore City, proceeding only against Dr. Handelsman. Dr. Handelsman filed a motion to dismiss the action on the ground that it was not timely filed. Judge Martin Greenfeld held a hearing on the motion and denied it. On 21 October 1988, Dr. Handelsman filed a motion for summary judgment. That motion was heard on 20 March 1989 by Judge Thomas Ward. By order entered 21 March 1989, Judge Ward granted Dr. Handelsman's motion for summary judgment, but only as to the claim of Mrs. Ungar. Mrs. Ungar's timely motion for reconsideration was denied on 21 April 1989. On 3 May 1989, recognizing that the earlier order did not dispose of all claims in the case, counsel for Dr. Handelsman requested that Judge Ward enter an additional order granting summary judgment against Mr. Ungar. Judge Ward entered such an order on 10 May 1989.

On 22 May 1989, petitioners filed a "Motion for Reconsideration" pursuant to Maryland Rule 2–534, asking that the court vacate the judgments entered against both plaintiffs. This motion purportedly was signed by Elana Rhodes Byrd as attorney for the Ungars. Ms. Byrd's appearance had not previously been entered in the case. By order of 28 June

1989, entered sua sponte, Judge Ward declared that the plaintiffs' motion for reconsideration was "a forgery" and directed that it be stricken. On 28 July 1989, the Ungars filed a notice of appeal. The Court of Special Appeals affirmed in an unreported opinion, and we granted certiorari.

## II.

We first consider Dr. Handelsman's contention that petitioners' appeal was not timely. A final and appealable order was entered on 10 May 1989, when summary judgment was entered against Mr. Ungar, thereby disposing of the last of the claims in the case. *See* Maryland Rule 2–602(a); *Estep v. Georgetown Leather*, 320 Md. 277, 286–87, 577 A.2d 78 (1990). Ordinarily, a notice of appeal must be filed "within 30 days after entry of the judgment or order from which the appeal is taken." Maryland Rule 8–202(a). There is an exception, however, when certain post judgment motions are timely filed. Maryland Rule 8–202(c) provides:

In a civil action, when a timely motion is filed pursuant to Rule 2–532, 2–533, or 2–534, the notice of appeal shall be filed within 30 days after entry of (1) a notice of withdrawing the motion or (2) an order denying a motion pursuant to Rule 2–533 or disposing of a motion pursuant to Rule 2–532 or 2–534.

The Ungars' motion for reconsideration, filed pursuant to Rule 2–534, was timely.[1] Thus, their appeal on 28 July, filed within 30 days of Judge Ward's disposition of the motion on 28 June, would appear to have been timely filed. Dr. Handelsman argues, however, that Judge Ward's disposition of the motion was in accordance with Maryland Rule 1–311(c), which provides:

---

**1.** A motion filed pursuant to Rule 2–534 must be filed within 10 days after entry of judgment. Judgment was entered on 10 May, and computing the time in accordance with Rule 1–203(a) the tenth day thereafter was 20 May. Because 20 May was a Saturday, the tenth day is deemed to be the next regular business day, 22 May.

If a pleading or paper is not signed as required (except inadvertent omission to sign, if promptly corrected) or is signed with intent to defeat the purpose of this Rule, it may be stricken and the action may proceed as though the pleading had not been filed.

Thus, says the defendant, if the action is treated as having "proceed[ed] as if the motion had never been filed," the time for taking an appeal was never tolled, and the appeal was not timely. In a similar vein, he argues that if the pleading was a forgery, it should in any event be treated as a nullity, and the result is the same.

■ The short answer to this question is that the trial judge erred in entering his order striking the motion for reconsideration; consequently, his order must be vacated, leaving the motion intact and the appeal timely. The trial judge's error was in acting upon information brought to his attention from an undisclosed source, without first having disclosed that information to the parties and permitting a reasonable opportunity for investigation and response. The memorandum order filed by the judge recited the following:

> Subsequent to the filing of the Motion For Reconsideration, this Court was presented with information that someone had forged the signature of Elana R. Byrd to the Motion as attorney for the Plaintiffs. Ms. Byrd does not now, nor has she ever, represented these Plaintiffs. The signature on the Motion is a forgery, and the Motion itself appears to be an attempt to perpetuate a fraud on this Court.

> In light of this information, IT IS, this 28th day of June, 1989, ORDERED that Plaintiffs' Motion For Reconsideration is STRICKEN.

The trial judge did not identify the source of the information upon which he acted.[2] Nor did he bring this information to the attention of the parties or require that it be

---

2. A subsequent pleading filed by the Ungars suggests the trial judge acquired this information through a letter sent to him by Elana Rhodes Byrd, the attorney in whose name the motion had been filed.

presented as evidence. The parties, and most particularly the Ungars, were not afforded notice of this serious allegation, nor were they given any opportunity to investigate the allegation or to file a response. Thus, the allegation has never been tested for accuracy, the surrounding circumstances have never been explained, and the parties have been deprived of any opportunity to present evidence or arguments. We conclude that the trial judge failed to afford the parties the procedural due process that was required under the circumstances. *See Talley v. Talley,* 317 Md. 428, 434–35, 564 A.2d 777 (1989); *Phillips v. Venker,* 316 Md. 212, 217–22, 557 A.2d 1338 (1989). *Cf. Gardner v. Florida,* 430 U.S. 349, 358–62, 97 S.Ct. 1197, 1204–07, 51 L.Ed.2d 393 (1977); *Driver v. State,* 201 Md. 25, 32, 92 A.2d 570 (1952); *Wiseman v. State,* 72 Md.App. 605, 609–10, 531 A.2d 1311 (1987); *Smith v. State,* 64 Md.App. 625, 633–35, 498 A.2d 284 (1985).

### III.

Because our disposition does not preclude appropriate consideration of the allegation of forgery if further action is taken to properly place the matter in issue, we comment on this question for the guidance of the trial court. Maryland Rule 1–311 provides, in pertinent part:

(a) Requirement.—Every pleading and paper of a party represented by an attorney shall be signed by at least one attorney who has been admitted to practice law in this State and who complies with Rule 1–312. Every pleading and paper of a party who is not represented by an attorney shall be signed by the party. Every pleading or paper filed shall contain the address and telephone number of the person by whom it is signed.

\* \* \* \* \* \*

(c) Sanctions.—If a pleading or paper is not signed as required (except inadvertent omission to sign, if promptly corrected) or is signed with intent to defeat the purpose of this Rule, it may be stricken and the action may proceed as though the pleading had not been filed. For a

wilful violation of this Rule, an attorney is subject to appropriate disciplinary action.

The sanction of striking a pleading or paper not properly signed and treating it as though it had not been filed was derived from Fed.R.Civ.P. 11. The federal rule was amended in 1983, and that sanction was modified. In 2A *Moore's Federal Practice* § 11.01[4] at 11–6 (2d ed. 1984), the authors offered this comment concerning the amendment:

> The provision in the original rule for striking pleadings and motions as sham and false has been deleted. The passage has rarely been utilized, and decisions thereunder have tended to confuse the issue of attorney honesty with the merits of the action.

Although Maryland retains the option as originally written, it is well to bear in mind that its utilization may have serious consequences, and that the sanction selected for a violation of a rule should be consistent with "the totality of the circumstances and the purpose of the rule." Maryland Rule 1–201(a).

■ If it should develop that Ms. Byrd's name was placed on the motion without her knowledge or consent, and that the forgery was procured or knowingly acquiesced in by the Ungars, it may be appropriate to strike the motion and to treat it as if it had not been filed. On the other hand, if someone else filed the motion on behalf of the Ungars, but without the Ungars being aware that the signature of the attorney was unauthorized, the imposition of such a sanction would be inappropriate, because under the circumstances of the case, it would extinguish the Ungars' claim without possibility of appeal even though the Ungars were personally innocent of any wrongdoing and believed their right of appeal had been preserved by the filing of a legitimate motion.

■ Dr. Handelsman suggests that the motion may have been signed and filed by Jeffrey Greenspan, the attorney who had represented the Ungars before the health claims arbitration panel and who had filed the action on behalf of

the Ungars in the circuit court. Greenspan was suspended from the practice of law in this state on 1 September 1988,[3] and he has not been reinstated. Thus, Dr. Handelsman posits, Greenspan may have prepared the motion and signed the name of another attorney in order to protect the interest of the Ungars, and possibly to protect his own interest in the outcome of the case. If that is so, respondent argues, the Ungars should be held responsible for the actions of their agent, even though the forgery was unknown to and unauthorized by them. We do not agree. The substance of the motion was appropriate, and the filing of the motion protected vital interests of the plaintiffs. Even if the signature of Ms. Byrd was a forgery, the motion may continue to serve its legitimate purpose if the trial court allows the Ungars to adopt it as their own. *See Simons v. United States*, 497 F.2d 1046, 1049 (9th Cir.1974) (trial court should have permitted amendment of pleading deficient when originally filed); *Matter of Estate of Alarcon*, 149 Ariz. 336, 718 P.2d 989, 991 (1986) (although motion for reconsideration did not meet the requirements of the rules, it was not a "nullity" and appeal period was properly computed from time motion was stricken); *Pavlak v. Duffy*, 48 F.R.D. 396, 398 (D.Conn.1969) (complaint signed by attorney not a member of the bar of court where filed should not be stricken where member attorney ratifies and adopts signature as his own).

Certainly there are occasions when a client will suffer loss as a result of the action or inaction of that client's attorney, and the only proper remedy in some cases may be an action by the client against the attorney for the loss. In the situation we have described, however, the damage has not yet occurred and the loss need not be sustained. If the clients are innocent, the court may protect them and at the same time ensure that appropriate disciplinary or other

---

**3.** *Attorney Griev. Comm'n v. Greenspan*, 313 Md. 180, 188–89, 545 A.2d 12 (1988).

action is taken against the person who executed or procured the forgery.

## IV.

██ If the motion for reconsideration is not stricken, it should be granted and the summary judgment entered against Mr. Ungar should be vacated as to Counts I and III of the Complaint.[4] Similarly, the earlier summary judgment entered against Mrs. Ungar should be vacated as to those counts.

The actions of the trial court in granting both motions for summary judgment are properly before us by reason of what we have found to be a timely appeal from a final judgment. *Sears v. B. and O. Railroad,* 219 Md. 118, 122, 148 A.2d 366 (1959). Although we might ordinarily decline to address those claims of error in the face of a pending motion for reconsideration, we conclude that the history and particular circumstances of this case dictate that we consider them.

Dr. Handelsman's motion for summary judgment was filed on 21 October 1988. The Certificate of Service shows that a copy of the motion was mailed to Jeffrey Greenspan, the attorney who had filed the action on behalf of the Ungars. Unbeknownst to counsel for Dr. Handelsman, Greenspan was then suspended from the practice of law in this state. Greenspan did not notify the Ungars that the motion had been filed until 6 February 1989. On 9 February, Mrs. Ungar filed an affidavit in opposition to the motion and requested that the hearing then scheduled for 15 February be continued to mid-March. She stated that Greenspan had advised her he was "suspended from the practice of law until March 1, 1989," and she was requesting the continuance so that the plaintiffs might have the

---

4. The Ungars conceded before the Court of Special Appeals that summary judgment was properly entered against them on Count II, which alleged lack of informed consent.

benefit of counsel at the hearing. The court continued the case to 20 March 1989.

On 20 March, Mrs. Ungar appeared with Greenspan. The trial judge, counsel for Dr. Handelsman, and Mrs. Ungar all assumed that Greenspan was no longer suspended from the practice of law, and Greenspan reinforced that incorrect belief. The trial judge assumed that Greenspan's appearance was no longer in the case, although neither the court nor Greenspan had taken any action to strike Greenspan's earlier appearance. The record reflects confusion and misunderstanding on the part of everyone, save perhaps Greenspan, concerning Greenspan's status.

Counsel for Dr. Handelsman argued that his motion should be granted because he had filed an affidavit concluding that he had not departed from the accepted standards of care in Mrs. Ungar's case, the health claims arbitration panel had found in his favor, and the plaintiffs had not filed a sufficient affidavit in opposition to his motion. Mrs. Ungar argued that there was a "factual dispute between Dr. Handelsman and Dr. Martins and my testimony." In her affidavit in opposition to the defendant's motion for summary judgment, Mrs. Ungar said:

At the Health Claims Arbitration hearing my expert medical witness was Dr. James K. Martins. He testified in my presence, that Dr. Handelsman breached the standard of care and caused my stroke. He has also written reports expressing the same opinions. These are attached as an exhibit to my affidavit. The Arbitration trial was transcribed, but I've not yet been able to order a copy for financial reasons.

Dr. Martins definitely believes Dr. Handelsman violated the standard of care. This genuine factual dispute between this expert and Dr. Handelsman continues to this day.

\*　　\*　　\*　　\*　　\*　　\*

I understand that genuine factual disputes prevent summary judgment.

The reports of Dr. James Martins which Mrs. Ungar attached to her affidavit confirmed that Dr. Martins, a medical doctor licensed in Minnesota and other states, had offered an opinion within reasonable medical probability that Dr. Handelsman was negligent in his care of Mrs. Ungar. Dr. Martins expressed the view that preoperative clinical and laboratory findings dictated that surgery be postponed to allow a complete work-up to determine the cause of the patient's elevated white blood count and temperature, and to determine whether a systolic click that had been noted represented a prolapsed mitral valve. Dr. Martins opined that had these studies been done, preoperative antibiotics and postoperative anticoagulants would have been administered, which probably would have avoided the embolic stroke Mrs. Ungar suffered.

In her affidavit, Mrs. Ungar stated that she had heard Dr. Martins testify in accordance with these reports before the health claims arbitration panel. Significantly, Dr. Handelsman's attorney did not dispute this statement. To the contrary, he advised the trial judge at the hearing of the motion for summary judgment that Dr. Martins had qualified as an expert and had testified for the plaintiffs at the hearing before the arbitration panel. He argued, however, that

> Dr. Martins is not a surgeon: he's never been a surgeon. He was brought in from Minnesota, or somewhere, to testify in this case. His only credential was he is an M.D. The only surgery he had ever done was 'kitchen table surgery.' He was able to qualify at that hearing.

That argument was wide of the mark. As Professor Lynn McClain notes in 5 *Maryland Evidence* § 702.2, "[g]enerally a physician need not be a specialist in order to be competent to testify on medical matters." *See Radman v. Harold,* 279 Md. 167, 173–76, 367 A.2d 472 (1977); *Wolfinger v. Frey,* 223 Md. 184, 189–90, 162 A.2d 745 (1960).

The summary judgment procedure is not a substitute for a trial on the merits—summary judgment is appropriate only when "there is no genuine dispute as to any material

fact and ... the party is entitled to judgment as a matter of law." Maryland Rule 2–501(a). Here, the affidavit of Mrs. Ungar coupled with the admission of Dr. Handelsman made it clear that there were contested issues which could not properly be resolved by summary judgment.

■ Dr. Handelsman advances an alternative argument in order to sustain the summary judgments. He argues that the trial court should have granted his earlier motion to dismiss on the ground that the action was not timely filed in the circuit court, and that because the action should have been dismissed at that time, the entry of summary judgment may be sustained on that ground.[5] We decline to consider that argument for several reasons: the argument was not presented to the trial judge as a ground for granting summary judgment; the question was not presented by the petition for certiorari or answer and is not embraced within our grant of certiorari, see Maryland Rule 8–131(b); and, Dr. Handelsman has not included in the record a transcript of the hearing of his motion to dismiss.

We conclude, therefore, that summary judgment was erroneously entered against both plaintiffs. Unless the

---

**5.** An action to nullify an award rendered by an arbitration panel must be commenced "within 30 days after the award is served upon the party rejecting the award, or within ten days after disposition of a timely application to the panel to modify or correct the award, whichever is later." Maryland Rule BY2 a. The Director of the HCAO is required to "cause a copy of [the award] to be served on each party within 15 days of having received it from the arbitration panel." Section 3–2A–05(g) of the Courts and Judicial Proceedings Article, Md.Code (1974, 1989 Repl.Vol.). The Director first attempted to serve the award on the Ungars' attorney by certified mail, return receipt requested. After two unsuccessful attempts (documented by the return of the certified letters to the HCAO), the Director ordered that service be accomplished by regular mail. The Ungars' attorney advised the HCAO of the date he received the award by regular mail, and the Director apparently advised all parties he would treat that date as the date of service. This action was filed in the circuit court within 30 days after that date. Dr. Handelsman argues that service of the award was proper under Rule 1–321(a), permitting service by mail of papers other than original pleadings, and was complete upon the first mailing of the first certified letter.

pending motion for reconsideration is stricken in accordance with the principles we have earlier discussed, the motion must be granted, and both judgments vacated.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT FOR REMAND TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.