838 A.2d 381

**SAMSUN CORPORATION t/a Singer Exxon**

v.

**Jeffrey G. BENNETT.**

**No. 2705, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

Dec. 11, 2003.

Linda Springrose (Ami C. Dwyer, Franklin Prokopik on the brief), Baltimore, for appellant.

Gerald F. Gay (Arnold, Sevel & Gay, P.A. on the brief), Baltimore, for appellee.

Argued before DAVIS, BARBERA and DEBORAH S. EYLER, JJ.

DAVIS, Judge.

In this appeal, we are called upon to address the issue of whether an expert witness with general knowledge may be qualified to testify as to subject matter involving special knowledge, skill, experience, training, and education. In prior decisions of the Court of Appeals and this Court, the necessity for expert testimony to prove causation has been thoroughly discussed. As will be discussed more fully, *infra*, the necessity to produce an expert to establish the requisite standard of

care when deficient medical care is alleged has been addressed. To a lesser extent, prior decisions have dealt with the qualifications requisite for a witness possessing general knowledge to testify as to a specialized field. We shall hold that deference is to be accorded the trial court in determining whether an expert with general knowledge is sufficiently conversant with the subject matter to render an opinion as to a specialized area of study.

On March 21, 2000, appellee Jeffrey Bennett filed a negligence action in the Circuit Court for Harford County against appellant Samsun Corporation, d/b/a Singer Exxon. The suit originated from appellee's slip and fall accident in the restroom of the Singer Exxon, from which appellee alleged he suffered lower back injury and resulting erectile dysfunction. The case was tried before a jury on December 3 and 4, 2002. On the first day of trial, appellant filed a motion *in limine*, requesting that the court exclude the testimony of appellee's orthopaedic expert witness, Dr. Vincent Osteria. The motion was preliminarily denied by the trial judge. Appellant renewed the motion *in limine* after Dr. Osteria was questioned on his qualifications and training as an orthopaedist, but the trial judge again denied the motion.

At the close of all of the evidence, appellant filed a Motion for Judgment on the grounds that appellee did not establish causation between the accident and his injuries. The motion was denied and, on December 4, 2002, the jury returned a verdict in favor of appellee in the amount of $111,662.50. Following the verdict, appellant filed a Motion for New Trial on December 16, 2002, which the lower court denied on January 8, 2003. Appellant filed this timely appeal on January 21, 2003, presenting one question, which we divide into two questions and rephrase as follows:

I.   Did the trial court err by denying appellant's motion *in limine* to exclude the testimony of appellee's expert witness?

II.  Did the trial court err by denying appellant's motion for judgment, which alleged that there was insufficient

evidence to establish a causal connection between appellee's accident/back injury and his erectile dysfunction?

We answer appellant's questions in the negative and affirm the judgment of the trial court.

## FACTUAL BACKGROUND

On August 1, 1998, appellee suffered a slip and fall on the restroom floor of the Singer Exxon, which is located in Bel Air, Maryland. Appellee suffered an injury to his lower back as a result of the fall and was treated by an orthopaedist, Dr. Vincent Osteria, on August 4, 1998. During the examination, appellee alleged that he suffered pain and numbness on the left side of his lower body, specifically in the left buttocks and foot. Although no surgery was necessary, appellee remained in the care of Dr. Osteria for several weeks and during that time appellee complained of developing bladder, bowel, and erectile dysfunctions.[1] As a result of the erectile dysfunction, Dr. Osteria referred appellee to a urologist, Dr. James Song, in November 2000. Dr. Song, however, was either unwilling or unable to render a conclusion as to the exact cause of appellee's erectile dysfunction.

Appellee subsequently filed a negligence action against appellant. One of the primary issues at trial was the cause of appellee's erectile dysfunction. Appellee called Dr. Osteria as an expert witness to testify that the erectile dysfunction had resulted from the slip and fall at the Singer Exxon. In response, appellant filed a motion *in limine* to exclude Dr. Osteria's testimony, arguing that he was not qualified to testify as an expert. Specifically, appellant claimed that, because Dr. Osteria was an orthopaedist specializing in spinal injury and not in urology, he lacked the necessary knowledge

---

1. Dr. Osteria had treated appellee without surgery on prior occasions for lower back injuries, but the previous treatment primarily dealt with the right side of appellee's body. Appellee was treated by Dr. Osteria in the mid–1980's and in 1995 for a herniated disc in the lower back, which created symptoms in appellee's right leg.

required to form an expert opinion concerning appellee's erectile dysfunction. The trial judge denied the motion and Dr. Osteria was permitted to establish his qualifications and training as an orthopaedist. After the witness foundation was laid, appellant renewed the motion *in limine* to exclude Dr. Osteria's testimony. The trial judge again denied the motion and Dr. Osteria was permitted to testify concerning appellee's erectile dysfunction.

On October 31, 2002, Dr. Osteria prepared the following report detailing appellee's injury:

I: [Appellee] is having more pain in the left leg but he continues to work and he is managing with short haul trucking. He cannot do the long haul work. He also wants to have another epidural block and his insurance is just about to cut in again so he is going to think about getting that done. He is due to go to court in December as well.

IMPRESSION: As far as I am concerned, this man has a symptomatic herniated disc with radiculopathy. It's been proven clearly by MR scan, etc. and is directly as a result of his fall in the gas station as I outlined in my original notes.

DIAGNOSIS: HNP L5–S1 with radiculopathy.

DISPOSITION: Follow-up as necessary.

Note: He continues to experience sexual dysfunction, in my opinion, as a result of his fall, although I have referred him to a urologist for urological opinion. Reviewing my old chart, shows no evidence of these complaints prior to the fall in 1998.

Dr. Osteria testified that, when he had treated appellee on the occasions prior to the accident at the Singer Exxon, a herniated disc bulged to the right of appellee's spine, whereas after the accident, a larger bulging disc protruded to the left. It was Dr. Osteria's medical opinion that the bulge to the left was a new injury resulting from the slip and fall and that the left bulge was "picking off" nerve roots that exited from appellee's lower spine.

As explained by Dr. Osteria, orthopaedics is "the study and treatment of skeleton, muscles, tendons, ligaments, nerves, the spine and extremities." Furthermore, Dr. Osteria testified that the field of orthopaedics includes the study of nerves emanating from the spinal cord and the consequences of injury to those nerves. On direct examination, Dr. Osteria testified:

[APPELLEE'S COUNSEL]: Counsel asked if you trained in the field of urology or field of erectile dysfunction. Do you have any education or training concerning the relationship between injuries to the spinal cord and nerves emanating from the spinal cord and the occurrence of erectile dysfunction?

[WITNESS]: Yes, sir.

[APPELLEE'S COUNSEL]: Tell us about that.

[WITNESS]: It can be spinal cord or spinal cord nerve injuries can be one of the causes of erectile dysfunction and we have the general knowledge in the sense that you have to avoid doing any damage to those nerve roots to avoid the possible complication of either erectile dysfunction, difficulty with bladder control, difficulty with the control of the sphincter senses or motor parts of the lower extremities which are controlled with the nerve roots.

[APPELLEE'S COUNSEL]: The level in this case is [fifth lumbar] L5 [first sacral] S1. In the field of medicine, to your knowledge, is there any known relationship to injuries to that level and to erectile dysfunction?

[WITNESS]: Yes.

[APPELLEE'S COUNSEL]: Tell us about that.

[WITNESS]: It is possible that an injury at that level can damage the nerve fibers which would produce either the ability to have an erection, to control the bladder, sphincter dysfunction. One of the things we test for at times [is] motor, erection, sphincter tone. We ask patients if they have problems controlling [the] bladder, et cetera.

[APPELLEE'S COUNSEL]: As a result of your experience in the field of orthopaedic surgery do you form

opinions concerning problems, causes of erectile dysfunction due to injuries to the spinal cord?

[WITNESS]: It is within the limits of our experience.

Dr. Osteria further testified that the damaged nerve roots control bladder, bowel, and erectile functions. Consequently, Dr. Osteria concluded, to a reasonable degree of medical probability, that appellee's new injury was responsible for his erectile dysfunction.

At the close of all evidence, appellant filed a motion for judgment. According to appellant's motion, appellee failed to establish the necessary causation between his injuries and the slip and fall accident at the Singer Exxon. As a result, appellant argued that the jury would be left to speculate whether any permanent injuries, such as the erectile dysfunction, actually related to the August 1, 1998 accident. The lower court, however, denied the motion and the case was submitted to the jury. On December 4, 2002, the jury returned a verdict in favor of appellee. Appellant filed a motion for a new trial but the motion was denied on January 8, 2003. Following the proceedings in the circuit court, this appeal ensued.

## LEGAL ANALYSIS

### I

Appellant contends that the trial judge erred by denying his motion *in limine* to exclude the testimony of appellee's expert witness, Dr. Osteria. As at trial, appellant posits that only a specialist, such as a urologist, is qualified to present an opinion concerning the causes of erectile dysfunction. According to appellant, Dr. Osteria is an orthopaedist and, therefore, only qualifies as an expert for issues relating to the musculature, nervous system, and bone structure of the human body. Although Dr. Osteria testified that he had a general knowledge in the area of erectile dysfunction, appellant argues that an expert witness must have specialized knowledge. As a result, appellant claims that Dr. Osteria should not have been

permitted to testify about the causes of appellee's erectile dysfunction.

Appellee counters that the trial judge has wide discretion in determining whether to admit expert testimony. Furthermore, appellee asserts that a physician does not need to be a specialist in order to testify on matters in the medical field. Because orthopaedics includes the study and treatment of nerves stemming from the spine, appellee argues that Dr. Osteria commonly deals with spinal injury related symptoms such as erectile dysfunction. Consequently, appellee contends that the trial judge was correct in denying appellant's motion *in limine.*

Maryland Rule 5–702 [2] controls the admissibility of expert testimony. Rule 5–702 codified the common law rule that the trial judge must determine whether expert testimony may be admitted. *Sippio v. State,* 350 Md. 633, 649, 714 A.2d 864 (1998). "Under the well-established Maryland common law of evidence, it is within the sound discretion of the trial court to determine the admissibility of expert testimony." *Id.* at 648, 714 A.2d 864. The court's ruling on whether to admit or exclude expert testimony will seldom require a reversal. *Id.; Radman v. Harold,* 279 Md. 167, 173, 367 A.2d 472 (1977). A lower court's ruling, however, may be reversed if the lower court clearly abused its discretion or founded its ruling on some error of law. *Sippio,* 350 Md. at 648, 714 A.2d 864.

In order to qualify as an expert, the witness must have special knowledge of the subject so that the expert "can give the jury assistance in solving a problem for which [its] equipment of average knowledge is inadequate." *Baltimore*

---

2. **Rule 5–702. Testimony of experts.**

Expert testimony may be admitted, in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. In making that determination, the court shall determine (1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education, (2) the appropriateness of the expert testimony on the particular subject, and (3) whether a sufficient factual basis exists to support the expert testimony.

*Gas & Electric Co. v. Flippo,* 112 Md.App. 75, 98, 684 A.2d 456 (1996) (quoting *Radman,* 279 Md. at 173, 367 A.2d 472); *see also* Md. Rule 5–702. Under Maryland law, as a general proposition, in order to qualify as an expert, the witness need not possess special knowledge if he or she is generally conversant with the subject of the controversy. In the area of medical expert testimony, "a physician need not be a specialist in order to be competent to testify on medical matters." *Ungar v. Handelsman,* 325 Md. 135, 146, 599 A.2d 1159 (1992) (quoting *Radman,* 279 Md. at 173–76, 367 A.2d 472).

In *Radman,* a patient of the defendant physician attempted to have an internal medicine specialist qualified as an expert witness to establish that the defendant physician did not perform a total abdominal hysterectomy according to the standard of care required of a surgeon in the performance of that procedure because, after unintentionally knicking the patient's bladder, it was not until the third operation to repair the patient's bladder that the problem was finally eliminated. Concluding that the trial judge applied an erroneous legal standard in excluding the testimony of the expert witness, the Court of Appeals reasoned:

> We do not agree entirely with the court's first reason, that the witness could not qualify as an expert in the flooring trade as he had never previously laid a floor. A witness may qualify if he [or she] possesses special and sufficient knowledge regardless of whether such knowledge was obtained from study, observation or experience. A law professor may be an expert on trial procedure even though he [or she] has never tried a case. There are many expert astronauts who have yet to make a space flight.

In light of the fact that we have never treated expert medical testimony any differently than other types of expert testimony, we perceive no reason why a person who has acquired sufficient knowledge in an area should be disqualified as a medical expert *merely* because he [or she] is not a specialist or *merely* because he [or she] has never personally performed a particular procedure.[2] Consequently, we are

in substantial agreement with the reasoning of the Supreme Court of Connecticut as expressed in the following succinct statement from the recent case of *Fitzmaurice v. Flynn,* 167 Conn. 609, 356 A.2d 887, 892 (1975):

> Recognizing the complexity of knowledge required in the various medical specialties, more than a casual familiarity with the specialty of the defendant physician is required. The witness must demonstrate a knowledge acquired from experience or study of the standards of the specialty of the defendant physician sufficient to enable him [or her] to give an expert opinion as to the conformity of the defendant's conduct to those particular standards, and not to the standards of the witness'[s] particular specialty if it differs from that of the defendant. It is the scope of the witness'[s] knowledge and not the artificial classification by title that should govern the threshhold [sic] question of admissibility.

We note that the great majority of courts in other jurisdictions which have considered the issue also have concluded that while the witness must have sufficient familiarity with the particular medical technique involved in the suit, he [or she] need not have personally performed the procedure or be a specialist in the area.

---

2. It is true, of course, that all expert witnesses must have sufficient knowledge "to express a well-informed opinion," *Refrigerating Co. v. Kreiner,* 109 Md. 361, 370, 71 A. 1066, 1070 (1909), or, to put it another way, they must possess such skill, knowledge or experience in that field or calling as to make it appear that (the) opinion or inference will probably aid the trier (of fact) in his search for truth." *Consol. Mech. Contractors v. Ball,* 263 Md. 328, 338, 283 A.2d 154, 159 (1971). *See also State Health Dep't v. Walker,* 238 Md. 512, 520–21, 209 A.2d 555, 559–60 (1965). While expert capacity is generally "a matter wholly relative to the subject of the particular inquiry," *Refrigerating Co. v. Kreiner, supra,* 109 Md. at 370, 71 A. at 1070, we believe that within the field of medicine too, the degree of knowl-

edge, skill, and experience required of a witness depends entirely on the area under investigation. Thus, while we have held that a person testifying in this State on a medical subject need not be licensed to practice in Maryland, *Crews v. Director*, 245 Md. 174, 179, 225 A.2d 436, 439 (1967), and have noted that a doctor need not be a specialist to qualify as an expert on the cause of an illness, *Wolfinger v. Frey*, 223 Md. 184, 189–90, 162 A.2d 745, 748 (1960) (dictum), we have also refused to allow those in the medical profession to testify when they were insufficiently familiar with the subject about which they were expressing an opinion. *See United Rys. Co. v. Corbin*, 109 Md. 442, 450, 72 A. 606, 608 (1909); *Dashiell v. Griffith*, 84 Md. 363, 377–78, 35 A. 1094, 1095 (1896).

*Radman*, 279 Md. at 171–72, 367 A.2d 472 (citations omitted).

In *Ungar, supra*, the defendant physician had removed the thyroid gland of a patient who suffered a stroke that caused significant permanent disability. The medical report attached to the patient's affidavit in support of her opposition to summary judgment represented that "preoperative clinical and laboratory findings dictated that surgery be postponed to allow a complete work-up to determine the cause of the patient's elevated white blood count and temperature, and to determine whether a systolic click that had been noted represented a prolapsed mitral valve." *Ungar*, 325 Md. at 146, 599 A.2d 1159. The expert witness opined that the embolic stroke would probably have been avoided had the studies been done and had antibiotics and post-operative anticoagulants been administered. The physician's attorney complained that petitioner's expert

> [was] not a surgeon: he's never been a surgeon. He was brought in from Minnesota, or somewhere, to testify in this case. His only credential was he is an M.D. The only surgery he had ever done was "kitchen table surgery." He was able to qualify at that hearing.

*Id.*

Judge McAuliffe, writing for the Court, responded to the arguments of counsel for the defendant physician: "That

argument was wide of the mark. As Professor Lynn McClain notes in 5 *Maryland Evidence* § 702.2, '[g]enerally a physician need not be a specialist in order to be competent to testify on medical matters.'" *Id.*

*Radman* and *Ungar* involve expert testimony offered to establish that the performance of the defendant physician did not comport with a requisite standard of care and the issue was whether knowledge acquired of the standard of the specialty of the defendant physician was sufficient to enable the expert to render an opinion as to the conformity of the defendant physician's conduct to those standards rather than the standards of the witness's particular area of practice. Stated otherwise, the purpose of the testimony of the expert was to inform the fact finder about acceptable medical practices and that the departure therefrom formed the basis of liability.

In *Wolfinger v. Frey, supra,* the expert testimony, as in the case before us, was offered to establish causation. Mrs. Frey sought to establish through her examining physician that the impact suffered when her car was struck in the rear as her vehicle was stopped at a red traffic light caused her cystitis and trigonitis to "flare up," resulting in some pyelitis and a twenty per cent disability as a result of her chronic pyelitis. In approving the admission of the testimony of appellee's examining physician that her condition was caused by a traumatic injury to the kidney sustained as a result of the collision, the court concluded: "Because of the importance in this case of Dr. Bring[s's] testimony, we may observe that we see no validity to a contention that unless he were a specialist in the medical field involved he could not testify to his opinion, basing it upon a case history and his examination of the injured person." *Id.* at 189–90, 162 A.2d 745. (*See* footnote 2 expounding on this point and setting forth a compendium of cases involving testimony by non-specialist medical experts wherein the qualifications of the witnesses have not been challenged or commented upon.)

Our research has uncovered decisions from other jurisdictions in which the testimony of a non-specialist medical expert has been allowed to establish causation. *See Turner v. New Mexico State Highway Dep't*, 98 N.M. 256, 648 P.2d 8 (Ct.App. 1982) (holding that a medical doctor with a specialty in pathology and had conducted one to three thousand autopsies, but was not a cardiologist, was qualified to know the effects of different factors on the heart); *Grant v. Burlington Indus., Inc.*, 77 N.C.App. 241, 335 S.E.2d 327 (1985) (holding that expert in family medicine with experience in the field of pulmonary diseases was qualified to render the opinion that patient's moderate to severe restrictive and obstructive disease was caused by her work as a "smash repairer" in the weave room where she worked for eighteen years); *Farkas v. Saary*, 191 A.D.2d 178, 594 N.Y.S.2d 195 (N.Y.App.Div.1993) (holding that "plaintiff's medical witness need not be a specialist in the pertinent field of medicine to qualify as an expert and to offer an opinion" that complete blindness in infant plaintiff's left eye was caused by the mother's use of progesterone during the first trimester of pregnancy); and *Ivy v. V's Holding Co.*, 859 So.2d 22 (La.Ct.App.) (holding that "[g]enerally, a treating physician's opinion is given more weight than a non-treating physician, and the testimony of a specialist is given more weight than a general practitioner," but that a physician specializing in family practice was qualified to render an opinion that patient's progression of persistent leg and back pain was consistent with a disc herniation and nerve-root-impingement injury resulting from an accident where a spring-loaded door closed on telephone collector aggravating her pre-existing back condition).

■ In the case *sub judice*, the lower court permitted Dr. Osteria, a licensed physician practicing in the field of orthopaedics, to offer an expert medical opinion concerning appellee's erectile dysfunction. Dr. Osteria, we think, had the requisite knowledge in order to form an expert opinion concerning appellee's erectile dysfunction. Although Dr. Osteria, unlike a urologist, is not a specialist in the area of erectile dysfunction, his knowledge, skill, experience, training, and

education as an orthopaedist render him capable of testifying as a medical expert in the area. As Dr. Osteria explained, his field includes the diagnosis of spinal injury and the related symptoms of spinal injury, such as erectile dysfunction. Dr. Osteria offered the opinion that appellee's erectile dysfunction was related to the lower back injury suffered at the Singer Exxon. His opinion, therefore, was consistent with his professional experiences and training. Thus, we conclude that the lower court did not abuse its discretion by denying the motion *in limine* and allowing Dr. Osteria to testify.

## II

Appellant also contends that the lower court erred by denying its motion for judgment. Appellant asserts that, even if Dr. Osteria was properly qualified to testify as an expert witness, his testimony failed to establish causation between appellee's erectile dysfunction and the accident at the Singer Exxon. Dr. Osteria's opinion, argues appellant, was based upon a legally insufficient factual basis because he based his opinion solely on the fact that appellee never complained of erectile dysfunction before the accident. Appellant also contends that Dr. Osteria's referral of appellee to a urologist constitutes evidence that he lacked the ability to diagnose the cause of the erectile dysfunction and this assertion is bolstered by the fact that appellee returned to Dr. Osteria, informing him that the urologist, Dr. Song, was unable to make a diagnosis regarding the cause of the erectile dysfunction. Appellant alludes to the fact that Dr. Song's findings regarding causation were missing from Dr. Osteria's file and that the latter was unable to recall if he had ever seen Dr. Song's report. Referring to Dr. Song's report, appellant ultimately asserts:

That report identified four possible causes of [appellee's] alleged dysfunction other than the fall: organic, neurogenic, psychogenic, or a result of narcotic use. The report indicated that Dr. Song was unable to determine the cause of the problem. Dr. Osteria did testify that [appellee] told him that Dr. Song couldn't make a diagnosis or wouldn't, wheth-

er the dysfunction was caused by the fall, or one of the other identified causes. Even armed with this information from the specialist, Dr. Osteria did not conduct any testing or gather any additional information to determine which of the five identified possible causes was the cause.

Despite the information from the specialist, no factual or medical evidence to demonstrate that the problem was caused by the fall, and his own lack of education, training, skill, and experience in the field of urology, and in diagnosing causes of erectile dysfunction specifically, Dr. Osteria was permitted to testify that the erectile dysfunction was caused by his fall at Singer Exxon.

Asserting that the referral to a specialist undermined Dr. Osteria's claim that he possessed the requisite knowledge, skill, experience, training and education, appellant, citing *Kujawa v. Baltimore Transit Company*, 224 Md. 195, 203–04, 167 A.2d 96 (1961), and *Ager v. Baltimore Transit Company*, 213 Md. 414, 420–21, 132 A.2d 469 (1957), contends that the "opinion was not sufficiently probable to establish causation, rather, was based on speculation or conjecture."

Appellee responds that Dr. Osteria's diagnosis was not based solely upon his observation that appellee had never complained of erectile dysfunction before, but was instead based on several medical sources and on Dr. Osteria's extensive knowledge of the spine and associated nerves. Appellee therefore posits that Dr. Osteria's opinion was not speculative but presented sufficient evidence for the jury to consider and that the denial of the motion for judgment was proper.

When a trial judge is ruling on a motion for judgment in a jury trial, the judge shall "consider all evidence and inferences in the light most favorable to the party against whom the motion is made." Md. Rule 2–519(b); *Metromedia Co. v. WCBM Maryland, Inc.*, 327 Md. 514, 518, 610 A.2d 791 (1992). "[I]f there is any competent evidence, however slight, leading to support the plaintiff's right to recover, the case should be submitted to the jury and ... the motion for judgment n.o.v. denied." *Montgomery Ward & Co. v. McFarland*, 21 Md.App.

501, 513, 319 A.2d 824 (1974). Thus, in the instant case, whether the trial judge properly denied the motion for judgment turns on whether appellee presented competent evidence in his negligence action. As appellant points out, erectile dysfunction is a complicated medical issue requiring expert testimony to establish causation. *See American Airlines Corp. v. Stokes*, 120 Md.App. 350, 355–59, 707 A.2d 412 (1998). Because Dr. Osteria was the only expert witness who testified on behalf of appellee, our inquiry focuses solely on whether Dr. Osteria's testimony was legally sufficient.

"[T]he facts upon which an expert bases his opinion must permit reasonably accurate conclusions as distinguished from mere conjecture or guess." *Sippio*, 350 Md. at 653, 714 A.2d 864 (quoting *State Health Dep't v. Walker*, 238 Md. 512, 520, 209 A.2d 555 (1965)). An expert witness must form an opinion based on probability and not on possibility. *Kujawa v. Baltimore Transit Co.*, 224 Md. 195, 203–04, 167 A.2d 96 (1961). "A factual basis for expert testimony may arise from a number of sources, such as facts obtained from the expert's first-hand knowledge, facts obtained from the testimony of others, and facts related to an expert through the use of hypothetical questions." *Sippio*, 350 Md. at 653, 714 A.2d 864.

In the instant case, Dr. Osteria's opinion that appellee's erectile dysfunction was caused by his accident in the Singer Exxon was based on numerous sources. In forming the opinion, Dr. Osteria testified that he made use of Magnetic Resonance Imaging (MRI) and electromyography (EMG) nerve and conduction studies. Specifically, Dr. Osteria compared a 1994 MRI scan of appellee's back with an MRI scan generated immediately after the 1998 accident at the Singer Exxon. The 1994 MRI showed a herniated disc bulging to the right while the 1998 MRI showed a new herniated disc bulging to the left. Dr. Osteria opined that the new herniated disc, resulting from the 1998 accident, was "pushing both sacral nerve roots [one] and the fifth lumbar nerve root L5," the nerves responsible for controlling erectile functioning. Also, Dr. Osteria testified that the EMG tests confirmed what was

indicated by the MRI's. Based on the MRI's, the EMG tests, appellee's patient history, and what appellee communicated to him, Dr. Osteria concluded that the accident at the Singer Exxon was responsible for appellee's erectile dysfunction.

Under the circumstances in the *sub judice*, Dr. Osteria had a sufficient basis from which to testify concerning appellee's erectile dysfunction. The basis of his opinion did permit a reasonably accurate conclusion, one that is not based on mere speculation or conjecture. Therefore, his testimony represented competent evidence, lending support to appellee's claim, and was thus properly submitted to the jury.

During oral argument, appellate counsel was asked whether there had been an attempt to take the depositions of the expert witnesses and whether there had been any consideration of offering expert testimony to establish that the erectile dysfunction was not caused by appellee's slip and fall. Having properly determined that Dr. Osteria was qualified to testify as to causation, the issues appellant raises regarding the alleged failure of Dr. Osteria to "conduct any testing or gather any additional information to determine which of the five identified possible causes was the cause," whether the referral to Dr. Song was an indication that Dr. Osteria lacked the requisite knowledge and skill, whether it was incredible that Dr. Osteria did not recall the report of the urologist and whether there was an inadequate basis for Dr. Osteria's opinion are all matters properly submitted to the fact finder for resolution. The arguments that appellant makes on appeal were proper arguments for the jury to consider and, indeed, the argument might have been more persuasive had appellant availed itself of more extensive discovery and offered a countervailing opinion as to causation.

Consequently, the lower court was correct in its denial of the motion for judgment.

**JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**